Michael R. Minkoff, Esq.
Bar No.: 084112013
JOSEPH & NORINSBERG, LLC
110 East 59th Street, Suite 2300
New York, New York 10022
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANDRES MUÑOZ and ELZON UZIEL ARMENTA, on behalf of themselves, individually, and on behalf of all others similarly-situated,<br><br>                          Plaintiffs,<br><br>                 -against-<br><br>TACOS VICTORIA LLC, TAQUERIA VIVA MEXICO LLC, SOL AZTECA RESTAURANT, MARCO A. VICTORIA AMADO, individually, LETICIA AMADO VAZQUEZ, individually, and JULIO CESAR VICTORIA AMADO, individually,<br><br>                       Defendants. | **COMPLAINT**<br><br>Civil Case No.: 25-CV-00894<br><br>**JURY TRIAL DEMANDED**<br><br>**CLASS AND COLLECTIVE ACTION** |

Plaintiffs, ANDRES MUÑOZ ("Plaintiff Muñoz") and ELZON UZIEL ARMENTA ("Plaintiff Armenta") (collectively "Plaintiffs"), on behalf of themselves, individually, and on behalf of all others similarly-situated, by and through their attorneys, Joseph & Norinsberg, LLC, as and for their Complaint against TACOS VICTORIA LLC ("Defendant Tacos Victoria"), TAQUERIA VIVA MEXICO LLC ("Defendant Taqueria Viva Mexico"), and SOL AZTECA RESTAURANT ("Defendant Sol Azteca") (hereinafter referred to as "the Corporate Defendants"), MARCO A. VICTORIA AMADO ("Defendant Marco"), individually, LETICIA AMADO VAZQUEZ ("Defendant Leticia"), individually, and JULIO CESAR VICTORIA AMADO ("Defendant Julio"), individually (all, collectively where appropriate, as "Defendants"), allege

1

upon knowledge as to themselves and their own actions and upon information and belief as to all other matters as follows:

## NATURE OF THE CASE

1.      This is a civil action for damages and equitable relief based upon willful violations that the Defendants committed of Plaintiffs' rights guaranteed to them by: (i) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a);   (ii) the ant-discrimination and retaliation provisions of the FLSA, 29 U.S.C. § 215(a)(3); (iii) the overtime provisions of the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a et seq.; (iv) the minimum wage provisions of the NJWHL, N.J.S.A. 34:11-56a et seq.; (v) the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. § 34:19-1 *et seq.*; (vi) New Jersey common law prohibitions against retaliation as set forth in *Pierce v. Ortho Pharmaceutical;* and (vii) any other claim(s) that can be inferred from the facts set forth herein.

## PRELIMINARY STATEMENT

2.      Defendant Tacos Victoria is a New Jersey limited liability company engaged in the business of operating a restaurant offering an array of central American cuisine.

3.      Defendants Taqueria Viva Mexico and Sol Azteca are two of three corporate entities that are nominally owned by Defendants Marco, Leticia, and Julio, but which, in reality, function as subsidiaries and/or agents of Defendant Tacos Victoria, and for whom Defendant Tacos Victoria is liable for any wage violations.

4.      Defendants Marco, Leticia, and Julio are owners, operators and managers of the Corporate Defendants, who set the companies' payroll policies, including the unlawful practices complained of herein.

2

5.      The Corporate Defendants together operate as a single enterprise and/or joint employer of Plaintiffs, in that Tacos Victoria controlled the economic realities of each of the other Corporate Defendants, including controlling all terms and conditions of Plaintiffs' and all others similarly situated individuals' employment, specifically with respect to hiring, firing, scheduling, maintaining employment records, and determining their rates of pay and administering their pay. Specifically, all documentation relating to Plaintiffs are maintained in Defendant Tacos Victoria's corporate offices, and Defendant Tacos Victoria exercises control over all Plaintiffs' work schedules by assigning them to work various jobs staffed by Tacos Victoria, thereby controlling the economic realities of their employment.

6.      As described below, throughout the entirety of their employment, Defendants have willfully failed to pay Plaintiffs the wages lawfully due to them under the FLSA and the NJWHL. Specifically, for the entirety of their employment, Defendants have required Plaintiffs to work, and Plaintiffs did in fact work, well in excess of forty hours during virtually every workweek of their employment. Yet Defendants willfully refused to pay Plaintiffs any overtime compensation for any of their hours worked beyond forty in a week in violation of the FLSA and the NJWHL. Instead, Defendants paid Plaintiffs at their regular rate of pay for all hours worked.

7.      Furthermore, Defendants violated the FLSA and NJWHL by failing to provide Plaintiffs with at least the federal and New Jersey statutory minimum wage for all hours worked.

8.      Defendants paid and treated all of their kitchen staff in the same manner, regardless of job title or job duties, by uniformly refusing to pay them any overtime compensation when their hours exceeded forty in a week, and by failing to pay them at least at the federal and New Jersey minimum wage rate for all hours worked.

9.      Moreover, Plaintiffs' attorneys delivered a notice of intent to sue to Defendants on July 16, 2024. Shortly after, Defendants significantly reduced Plaintiff Muñoz's work hours and wages. This apparent retaliatory action reduced Plaintiff Muñoz's weekly income by nearly 43%, causing substantial financial harm in direct response to Plaintiffs' assertion of their legal rights, in violation of FLSA § 215(a)(3), CEPA, and New Jersey common law under *Pierce*.

10.     Plaintiffs therefore bring this lawsuit against Defendants pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of themselves, individually, and on behalf of all other persons similarly-situated during the applicable FLSA limitations period who suffered damages as a result of the Defendants' willful violations of the FLSA.

11.     Similarly, Plaintiffs also bring this lawsuit as a class action pursuant to Federal Rule of Civil Procedure ("FRCP") 23, on behalf of themselves, individually, and on behalf of all other persons similarly-situated during the applicable NJWHL limitations period who suffered damages as a result of the Defendants' uniform and systemic violations of the NJWHL.

12.     Plaintiffs assert their claims under the NJWHL on behalf of themselves and any FLSA Plaintiffs who opt-into this action.

## JURISDICTION AND VENUE

13.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, et seq. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New Jersey law.

14.     Venue is appropriate in this court pursuant to 28 U.S.C. § 1391(b)(1) and/or (b)(2), as one or more of the Defendants reside within this judicial district, and as a substantial part of the events or omissions giving rise to the claims for relief occurred in this judicial district.

## PARTIES

15.    At all relevant times, Plaintiffs worked for Defendants in New Jersey and were "employees" entitled to the protections as defined in the FLSA and NJWHL.

16.    At all relevant times, Defendant Tacos Victoria was and is a New Jersey limited liability company with its principal place of business located in New Jersey.

17.    At all relevant times, Defendant Taqueria Viva Mexico was and is a New Jersey limited liability company with its principal place of business located in New Jersey.

18.    At all relevant times, Defendant Sol Azteca was and is a New Jersey business entity with its principal place of business located in New Jersey.

19.    At all relevant times Defendants Marco, Leticia, and Julio are owners, operators and managers of the Corporate Defendants, who set the companies' payroll policies, including the unlawful practices complained of herein.

20.    The Corporate Defendants together operate as a single enterprise and/or joint employer of Plaintiffs and all others similarly situated.

21.    At all relevant times herein, Defendants were "employers" within the meaning of the FLSA and the NJWHL. Additionally, the Corporate Defendants - - both singly and together as a single enterprise/joint employer - - employed two or more employees, had qualifying annual business volume exceeding $500,000.00 at all relevant times, and are and have been engaged in interstate commerce within the meaning of the FLSA, as they routinely purchase and use equipment and materials that are and have been moved in interstate commerce that originated in states other than New Jersey, the combination of which subjects Defendants to the FLSA's overtime requirements as an enterprise.

## **COLLECTIVE ACTION ALLEGATIONS**

22.     Plaintiffs seek to bring this suit to recover from Defendants unpaid overtime compensation and liquidated damages pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 216(b), on their own behalf, as well as on behalf of those in the following collective:

> Current and former kitchen, hospitality, and delivery staff who, during the applicable FLSA limitations period, performed any work for any of the Defendants, and who consent to file a claim to recover damages for: (1) overtime compensation that is legally due to them; (2) minimum wages that are legally due to them; and/or (3) treble damages that are legally due to them ("FLSA Plaintiffs").

23.     Defendants treated Plaintiffs and all FLSA Plaintiffs similarly in that Plaintiffs and all FLSA Plaintiffs: (1) performed similar tasks, as described in the "Background Facts" section below; (2) were subject to the same laws and regulations; (3) were paid in the same or similar manner; (4) were required to work in excess of forty hours in a workweek; and (5) were not paid the required one and one-half times their respective regular rates of pay for all hours worked per workweek in excess of forty.

24.     At all relevant times, Defendants are and have been aware of the requirements to pay Plaintiffs and all FLSA Plaintiffs at an amount equal to the rate of one and one-half times their respective regular rates of pay for all hours worked each workweek above forty, yet they purposefully and willfully chose and choose not to do so.

25.     The precise number of FLSA Plaintiffs should be readily available from a review of the Defendants' personnel, scheduling, time, and payroll records, and from input received from the collective action as part of the notice and "opt-in" process provided by 29 U.S.C § 216(b).

26.    Thus, all FLSA Plaintiffs are victims of Defendants' pervasive practice of willfully refusing to pay their employees overtime compensation for all hours worked per workweek above forty, in violation of the FLSA.

## RULE 23 CLASS ALLEGATIONS

27.    In addition, Plaintiffs seek to maintain this action as a class action pursuant to FRCP 23(b)(3), individually, on their own behalf, as well as on behalf of those who are similarly situated who, during the applicable limitations period, were subjected to violations of the NJWHL.

28.    Plaintiffs seeks certification of the following FRCP 23 class:

> Current and former kitchen workers and/or delivery drivers who performed any work for Defendants during the statutory period within the State of New Jersey ("Rule 23 Plaintiffs").

29.    All of the requirements under FRCP(b)(3) are satisfied, as set forth below.

30.    Moreover, Plaintiffs and the Rule 23 Plaintiffs have all been injured in that they have been uncompensated, under-compensated, or untimely compensated due to Defendants' common policies, practices, and patterns of conduct. For instance, Plaintiffs and the Rule 23 Plaintiffs have suffered a concrete injury in fact and as a result have been actually harmed by Defendants' failure to pay them overtime compensation for all hours worked beyond forty in a week. Specifically, Plaintiffs and the Rule 23 Plaintiffs were deprived of their ability to purchase with their timely wages, invest their timely wages, accrue interest on their timely wages, or otherwise utilize the value that their wages would have held had they been paid timely.

## Numerosity & Ascertainability

31.    During the applicable NJWHL and NJWPL limitations period, the Defendants have, in total, employed at least 40 employees that are putative members of this class.

32.     The precise number of the Rule 23 Plaintiffs is readily ascertainable through a review of Defendants' personnel, time, and payroll records.

### Common Questions of Law and/or Fact

33.     There are questions of law and fact common to each Rule 23 Plaintiff that predominate over any questions solely affecting individual members of the FRCP 23 class, including but not limited to the following: (1) the duties that the Defendants required and require each Rule 23 Plaintiff to perform; (2) the manner of compensating each Rule 23 Plaintiff; (3) whether the Defendants compensated Rule 23 Plaintiffs with overtime pay at their regular rates of pay or at time and one-half their regular rates of pay for all hours worked over forty in a week; (4) whether the Defendants compensated Rule 23 Plaintiffs for all hours of work; (5) whether the Defendants furnished and furnish Rule 23 Plaintiffs with accurate wage statements on each payday containing the information required by New Jersey law; (6) whether the Defendants kept and maintained accurate records of hours worked by Rule 23 Plaintiffs; (7) whether the Defendants kept and maintained records with respect to the compensation that it paid to the Rule 23 Plaintiffs for each hour worked; (8) whether the Defendants have any affirmative defenses to any of the Rule 23 Plaintiffs' claims; (9) whether the Defendants' actions with respect to the Rule 23 Plaintiffs were in violation of the NJWHL; and (10) if so, what constitutes the proper measure of damages.

### Typicality of Claims and/or Defenses

34.     As described in the "Background Facts" section below, the Defendants employed Plaintiffs and Rule 23 Plaintiffs within the meaning of the NJWHL and NJWPL.  Plaintiffs' claims are typical of the claims of the Rule 23 Plaintiffs whom they seek to represent, as the Rule 23 Plaintiffs: work and/or have worked for Defendant as restaurant workers in New Jersey; Defendants failed to pay them at least at the New Jersey minimum wage rate, while failing to pay

them time and one-half their regular rates of pay or the minimm wage rate for all hours worked beyond forty in a week; and Defendants did not provide them with accurate wage statements on each pay day.  Plaintiffs and the Rule 23 Plaintiffs enjoy the same statutory rights under the NJWHL to be paid overtime wages whenever their workweeks exceeded forty in a week, and to be furnished with accurate wage statements on each payday.

35.    Plaintiffs and the Rule 23 Plaintiffs have all sustained similar types of damages as a result of the Defendants' failure to comply with the NJWHL and NJWPL.  Plaintiffs and the Rule 23 Plaintiffs all have suffered injury including lack of compensation and/or untimely compensation due to the Defendants' common policies, practices, and patterns of conduct.  Thus, Plaintiffs claims and/or Defendants' defenses to those claims are typical of the Rule 23 Plaintiffs' claims and the Defendants' defenses to those claims.

### Adequacy

36.    Plaintiffs, as described below, worked the same or similar job duties as restaurant workers as the Rule 23 Plaintiffs throughout their employment with Defendants.  Defendants did not pay Plaintiffs at least at the minimum wage rate, nor time and one-half their regular rates of pay for all hours worked over forty in a week, instead choosing to pay them only at their straight-time rates of pay for all hours. Defendants also failed to furnish Plaintiffs with accurate wage statements on each payday. This is substantially similar to how Defendants paid and treated the Rule 23 Plaintiffs.

37.    Plaintiffs fully anticipate providing discovery responses and testifying under oath as to all of the matters raised in this Complaint and that will be raised in Defendants' Answer. Thus, Plaintiffs would properly and adequately represent the current and former employees whom Defendants have subjected to the treatment alleged herein.

38.     Additionally, Plaintiffs' counsel, Joseph & Norinsberg, LLC ("J&N"), has substantial experience in the field of employment law.  J&N is a well-respected litigation firm that represents Plaintiffs primarily in a wide variety of employment matters, including individual and class action litigation concerning wage and hour, discrimination, and harassment claims among others. J&N is dedicated to its clients, working tirelessly to achieve the best outcome for them, sometimes at a significant cost to the firm in terms of time, resources, and financial risk. Plaintiffs' counsel has handled hundreds of employment cases in federal districts courts, including dozens of Rule 23 class actions and FLSA collective actions.  Accordingly, Plaintiffs' counsel will fairly and adequately represent the interests of the putative class and will take all steps necessary to obtain class certification and appointment as class counsel.

**Superiority**

39.     A class action is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein, because such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication of evidence, effort, and expense that numerous individual actions would engender. This action will result in the orderly and expeditious administration of Class claims. Uniformity of decisions will be assured, thereby avoiding the risk of inconsistent and varying determinations. Plaintiffs know of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

40.     Plaintiffs have no, or very few, material facts relating to the Rule 23 Plaintiffs' claims that are atypical of those of the putative class.  Indeed, at all relevant times herein, the Defendants treated Plaintiffs identically, or at the very least, substantially similarly, to the Rule 23 Plaintiffs.

41.     Any lawsuit brought by any other restaurant worker and/or delivery driver based in New Jersey and employed by Defendants would be identical to a suit brought by any other such employee for the same violations.  Thus, separate litigation would risk inconsistent results.

42.     Accordingly, this class action is superior to any other method for protecting Rule 23 Plaintiffs' rights, and this action is properly maintainable as a class action under FRCP 23(b)(3).

## BACKGROUND FACTS

### *Allegations Common to All Plaintiffs*

43.     Defendant Tacos Victoria is a limited liability company with its principal place of business in New Jersey. Defendant Tacos Victoria operates a business of providing restaurant services offering an array of central American cuisine.

44.     Defendant Tacos Victoria worked with the other Corporate Defendants to help staff its various restaurant locations.

45.     The Corporate Defendants were, at all times relevant herein, a single integrated enterprise and joint employer of each of the Plaintiffs, with Defendant Tacos Victoria forming the central "axle" to the unlawful enterprise's wheel, and with each of the other Corporate Defendants operating as the "spokes" of that wheel.

46.     Specifically, each of the Corporate Defendants have, and had, an interrelation of operations in providing restaurant services with one another; concurrently control labor relations between employees and management, as Defendant Tacos Victoria would direct the other Corporate Defendants to staff the restaurant locations with kitchen staff that could be assigned to any given site at any given time in Defendant Tacos Victoria's discretion; are commonly managed by the same personnel, *i.e.*, Defendants Marco, Leticia, and Julio, who are the owners of the

Corporate Defendants; and are commonly owned and controlled financially by these individuals/entities.

47.     To that end, Defendant Tacos Victoria: kept and maintained all documentation relating to Plaintiffs' work assignments and hours worked within Defendant Tacos Victoria's corporate offices; assigned Plaintiffs to each of their jobs through the various Corporate Defendants; and unilaterally decided whether and when to discipline any of the Plaintiffs, including decisions relating to suspending their employment for any workplace rules or infractions enforced by Defendant Tacos Victoria.

48.     Moreover, Defendant Tacos Victoria controlled the economic realities of Plaintiffs' employment, as Plaintiffs performed jobs for Defendant Tacos Victoria through the other Corporate Defendants, with all wages flowing directly from Defendant Tacos Victoria's compensation.

49.     Defendants employed Plaintiffs as kitchen staff and delivery workers, including as kitchen helpers and dishwashers.

50.     Plaintiffs' primary job duties were to assist in food preparation, wash dishes, perform other kitchen-related tasks, and delivery food, as assigned by Defendants.

51.     Defendants required Plaintiffs to work at least six days per week, typically from 9:00 a.m. to 10:00 p.m., with one hour break, resulting in at least 72 compensable hours per week.

52.     Defendants paid Plaintiffs at hourly rates ranging from $10.00 to $11.00 per hour for all hours worked, whether few or many.

53.     Defendants failed and refused to pay Plaintiffs any overtime compensation - - neither at time and one-half their regular rate of pay, nor at time and one-half the New Jersey minimum wage rate - - for any of the hours that they worked beyond forty each week.

54.     In so doing, Defendants also failed to pay Plaintiffs at least at the then-applicable New Jersey minimum wage rate.

55.     Defendants paid each of the Plaintiffs weekly via personal check and/or cash.

56.     Defendants treated Plaintiffs and FLSA Plaintiffs in the same manner described above.

57.     Each hour that Plaintiffs and FLSA Plaintiffs worked was for the Defendants' benefit.

58.     Defendants acted in the manner described herein so as to minimize their overhead while maximizing profits.

***Plaintiff Andres Muñoz***

59.     Plaintiff Muñoz has worked for Defendant Tacos Victoria from November 2, 2023, to November 28, 2024.

60.     Plaintiff Muñoz works for Defendant Tacos Victoria as a kitchen helper and delivery person.

61.     From November 2, 2023, until July 20, 2024, Defendants required Plaintiff Muñoz to work six days per week, with Sundays off, from 9:00 a.m. to 10:00 p.m., with one hour break, resulting in 72 compensable hours per week.

62.     Defendants never provided Plaintiff Muñoz with any tip credit notice or informed him of the applicable minimum wage at any point during his employment.

63.     New Jersey's minimum wage in 2023 was $14.13 per hour and is currently $15.13 per hour for the first forty hours worked per workweek.

64.     From November 2, 2023, until approximately June 20, 2024, Defendants paid Plaintiff Muñoz at the rate of $10.00 per hour for all hours worked.

65.     From approximately June 20, 2024, until July 20, 2024, Defendants paid Plaintiff Muñoz at the rate of $11.00 per hour for all hours worked.

66.     From November 2, 2023, until July 20, 2024, Defendants failed to pay Plaintiff Muñoz at least the minimum wage for the first forty hours he worked each workweek.

67.     Moreover, from November 2, 2023, to July 20, 2024, Defendants consistently failed to pay Plaintiff Muñoz the legally required overtime rate of one and one-half times the minimum wage for all hours he worked beyond forty each week, despite Plaintiff Muñoz regularly working thirty-two overtime hours each week.

68.     From November 2, 2023, until approximately June 20, 2024, Defendants paid Plaintiff Muñoz in varying forms, including cash, check, or a combination of both.

69.     From approximately June 21, 2024, until approximately July 20, 2024, Defendants paid Plaintiff Muñoz entirely in cash.

70.     From November 2, 2023, until July 20, 2024, Defendants did not maintain any timekeeping method for tracking Plaintiff Muñoz's hours worked.

71.     On July 16, 2024, Plaintiffs' attorneys delivered a notice of intent to sue to Defendants Tacos Victoria, Leticia Amado Vazquez, and Julio Cesar Victoria Amado.

72.     In response to Plaintiffs' demand letter sent through counsel, Defendants retaliated by reducing Plaintiff Muñoz's hours worked to merely thirty hours each week.

73.     Specifically, from approximately July 20, 2024, until November 28, 2024, Defendants required Plaintiff Muñoz to work six days per week, six hours per day, with a one-hour uninterrupted break per day, resulting in thirty compensable hours per week.

74.     Moreover, from approximately July 20, 2024, until November 28, 2024, Defendants compensated Plaintiff at a rate of $15.13 per hour.

14

75.     Consequently, as a result of Plaintiffs' notice of intent to sue, Defendants retaliated against Plaintiff Muñoz by significantly reducing his wages - - i.e., before his notice of intent to sue, he received approximately $792.00 per week. After the retaliatory reduction in hours, Plaintiff Muñoz received only approximately $453.90, less applicable state and federal deductions, per week.

76.     Upon information and belief, from approximately July 20, 2024, until November 28, 2024, no other employees of Defendants suffered any other change / diminution in hours or compensation other than Plaintiff Muñoz's, demonstrating Defendants' overt retaliation against him for asserting his rights.

77.     On November 28, 2024, unable to survive on the reduced hours and diminished wages, Plaintiff Muñoz informed Defendant Julio via text message that he would not be returning to work. Defendants' retaliatory actions left Plaintiff Muñoz with no reasonable choice but to resign, amounting to a constructive discharge.

### *Plaintiff Elzon Uziel Armenta*

78.     Plaintiff Armenta worked for Defendants at multiple locations from in or about September 2020 until in or about May 2024.

79.     Defendants never provided Plaintiff Armenta with any tip credit notice or informed him of the applicable minimum wage at any point during his total employment with Defendants.

80.     From about September 2020 until approximately December 2021, Plaintiff Armenta worked for Defendant Taqueria Viva Mexico as a delivery person and dishwasher, with duties split almost equally between these roles.

81.    While at Defendant Taqueria Viva Mexico, for the first six months, Defendants required Plaintiff Armenta to work seven days per week, from 9:00 a.m. to 10:00 p.m., with one uninterrupted hour break, resulting in 84 compensable hours per week.

82.    New Jersey's minimum wage in 2020 and 2021 was $11.00 and $12.00 per hour, respectively.

83.    During this period at Defendant Taqueria Viva Mexico, Defendants paid Plaintiff Armenta about $785 per week, resulting in an hourly rate of approximately $9.34 for all hours worked, thereby failing to pay Plaintiff Armenta at least at the then-applicable New Jersey minimum wage rate.

84.    For the remaining time at Defendant Taqueria Viva Mexico, Defendants required Plaintiff Armenta to work six days per week, from 9:00 a.m. to 10:00 p.m., with one uninterrupted hour break, resulting in 72 compensable hours per week.

85.    During this latter period at Defendant Taqueria Viva Mexico, Defendants paid Plaintiff Armenta about $650 per week, resulting in an hourly rate of approximately $9.02 for all hours worked, still failing to pay Plaintiff Armenta at least at the then-applicable New Jersey minimum wage rate

86.    As such, Defendants failed to pay Plaintiff Armenta at least the minimum wage for the first forty hours he worked each workweek throughout his tenure at Defendant Taqueria Viva Mexico.

87.    Moreover, Defendants consistently failed to pay Plaintiff Armenta the legally required overtime rate of one and one-half times the minimum wage for all hours he worked beyond forty each week, despite Plaintiff Armenta regularly working in excess of forty hours each week.

88.     Defendants paid Plaintiff Armenta on a personal check and without a paystub throughout his tenure at Defendant Taqueria Viva Mexico.

89.     From August 2022 to March 2023, Plaintiff Armenta worked for Defendant Sol Azteca as a food prepper, dishwasher, and delivery person, with dishwashing being his primary duty, followed by delivery, then food prepping.

90.     While at Defendant Sol Azteca, Defendants required Plaintiff Armenta to work six days per week, from 9:00 a.m. to 10:00 p.m., with one uninterrupted hour break, resulting in 72 compensable hours per week.

91.     New Jersey's minimum wage in 2022 and 2023 was $13.00 and $14.13 per hour, respectively.

92.     While at Defendant Sol Azteca, Defendants paid Plaintiff Armenta approximately $683 per week, resulting in an hourly rate of approximately $9.49, again still failing to pay Plaintiff Armenta at least at the then-applicable New Jersey minimum wage rate.

93.     Moreover, while at Defendant Sol Azteca, Defendants consistently failed to pay Plaintiff Armenta the legally required overtime rate of one and one-half times the minimum wage for all hours worked beyond forty each week, despite Plaintiff Armenta regularly working 32 overtime hours per week.

94.     Defendants paid Plaintiff Armenta on a personal check and without a paystub throughout his tenure at Defendant Sol Azteca.

95.     Finally, from January 2024 to the end of May 2024, Plaintiff Armenta worked for Defendant Tacos Victoria as a dishwasher and delivery-personnel.

96.    While at Defendant Tacos Victoria, Defendants required Plaintiff Armenta to work six days per week, with Thursdays off, from 9:00 a.m. to 10:00 p.m., with one hour break, resulting in 72 compensable hours per week.

97.    While at Defendant Tacos Victoria, Defendants paid Plaintiff Armenta at the rate of $10.00 per hour for all hours worked.

98.    As such, Defendants failed to pay Plaintiff Armenta at least the minimum wage for the first forty hours he worked each workweek throughout his tenure at Defendant Tacos Victoria.

99.    Moreover, while at Defendant Tacos Victoria, Defendants consistently failed to pay Plaintiff Armenta the legally required overtime rate of one and one-half times the minimum wage for all hours worked beyond forty each week, despite Plaintiff Armenta regularly working 32 overtime hours per week.

100.    Defendants paid Plaintiff Armenta entirely in cash and without a paystub throughout his tenure at Defendant Tacos Victoria.

### FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
*Unpaid Overtime under the FLSA*

101.    Plaintiffs and FLSA Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

102.    29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for all hours worked exceeding forty in a workweek.

103.    As described above, Defendants are employers within the meaning of the FLSA, while Plaintiffs and FLSA Plaintiffs are employees within the meaning of the FLSA.

104.    Plaintiffs and FLSA Plaintiffs worked in excess of forty hours per week, yet Defendants failed to compensate Plaintiffs and FLSA Plaintiffs in accordance with the FLSA's overtime provisions.

105.    Defendants willfully violated the FLSA.

106.    Plaintiffs and FLSA Plaintiffs are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay.

107.    Plaintiffs and FLSA Plaintiffs are also entitled to liquidated damages, interest, attorneys' fees, and costs for Defendants' violations of the FLSA's overtime provisions.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unpaid Overtime under the NJWHL*

108.    Plaintiffs and FLSA Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

109.    N.J.S.A. 34:11-56a4 requires employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for all hours worked exceeding forty in a workweek.

110.    Defendants are employers within the meaning of the NJWHL, while Plaintiffs and FLSA Plaintiffs are employees within the meaning of the NJWHL.

111.    Plaintiffs and FLSA Plaintiffs worked in excess of forty hours in a workweek, yet Defendants failed to compensate them in accordance with the NJWHL's overtime provisions.

112.    Plaintiffs and FLSA Plaintiffs are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their regular rate of pay.

113.    Plaintiffs and FLSA Plaintiffs are also entitled to liquidated damages, interest, attorneys' fees, and costs for Defendants' violations of the NJWHL's overtime provisions.

## THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Failure to Pay Minimum Wages in Violation of the NJWHL*

114.    Plaintiffs and FLSA Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

115.    N.J.S.A. 34:11-56a4 prescribes a minimum wage that employers must pay to their employees for each hour worked.

116.    As described above, Defendants are employers within the meaning of the NJWHL, while Plaintiffs are employees within the meaning of the NJWHL.

117.    As also described above, Defendants did not compensate Plaintiffs and FLSA Plaintiffs at the minimum hourly rate required by the NJWHL for all hours worked.

118.    At the least, Plaintiffs and FLSA Plaintiffs are entitled to payment at the minimum wage for every hour worked for Defendants pursuant to the NJWHL's minimum wage provisions.

119.    Plaintiffs and FLSA Plaintiffs are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violations of the NJWHL's minimum wage provisions.

## FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Retaliation in Violation of 29 U.S.C. § 215(a)(3)*

120.    Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

121.    Section 215(a)(3) of the FLSA prohibits any person from discharging or in any other manner discriminating against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to the FLSA.

122.    Plaintiffs engaged in protected activity under the FLSA when their attorneys delivered a notice of intent to sue to Defendants on July 16, 2024.

123.    Defendants were aware of Plaintiffs' protected activity.

124.     Shortly after receiving the notice of intent to sue, Defendants took adverse action against Plaintiff Muñoz by significantly reducing his work hours and wages, and ultimately constructively discharging him.

125.     There is a causal connection between Plaintiffs' protected activity and the adverse action taken against Plaintiff Muñoz, as evidenced by the close temporal proximity between the notice of intent to sue and the reduction in hours and wages.

126.     As a result of Defendants' retaliatory actions, Plaintiff Muñoz has suffered and continues to suffer substantial losses in earnings.

127.     Defendants' conduct was willful, intentional, and in bad faith.

128.     Plaintiff Muñoz is entitled to all available remedies under the FLSA for Defendants' retaliatory actions, including but not limited to back pay, front pay, compensatory damages, punitive damages, liquidated damages, attorneys' fees, and costs.

## FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Retaliation in Violation of in Violation of CEPA, N.J.S.A. § 34:19-1 et seq.*

129.     Plaintiff Muñoz repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

130.     CEPA, N.J.S.A. § 34:19-1 *et seq.*, prohibits employers from taking any retaliatory action against any employee because the employee, *inter alia*, discloses to a supervisor or objects to participate in any activity that the employee reasonably believes is in violation of a law, rule, or regulation.

131.     As described above, at all relevant times, Defendants were "employers" while Plaintiff MUÑOZ was an "employee" as those terms are defined by CEPA.

132.    As described above, after the Plaintiff Muñoz complained about unlawful failure to pay wages that violated the law, the Defendants retaliated by, *inter alia,* cutting his hours and pay shortly after he reported his complaints, and ultimately constructively discharging him.

133.    Plaintiff Muñoz has suffered, and continues to suffer, damages as a result of Defendants' discrimination and retaliation.

134.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of CEPA, Plaintiff Muñoz has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

135.    As a result of the forgoing, Plaintiff Muñoz is entitled to economic damages, including lost wages and front pay, as well as compensatory damages, punitive damages, plus litigation costs and reasonable attorneys' fees.

### SIXTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Retaliation in Violation of in Violation of CEPA, N.J.S.A. § 34:19-1 et seq.*

136.    Plaintiff Muñoz repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

137.    The foregoing facts and circumstances demonstrate that Defendants have violated their common law obligations set forth by the New Jersey Supreme Court in Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58 (1980).

138.    Further, Defendants retaliated against Plaintiff Muñoz for engaging in protected activity by, *inter alia,* cutting his hours and pay shortly after he complained about and opposed unlawful wage practices, and ultimately constructively discharging him.

139.    As a consequence of Defendants' retaliatory actions in violation of New Jersey common law, Plaintiff Muñoz is now suffering substantial injury, including emotional distress and monetary damages, and will continue to do so unless and until the Court grants relief.

140.    As a consequence of Defendants' retaliatory actions, Plaintiff Muñoz is entitled to recover from Defendants lost pay, compensatory damages, punitive damages, costs, attorney's fees, and other appropriate relief.

## DEMAND FOR A JURY TRIAL

141.    Pursuant to FRCP 38(b), Plaintiffs and FLSA Plaintiffs demand a trial by jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and FLSA Plaintiffs demand judgment against Defendants as follows:

a.    A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned United States and New Jersey State laws;

b.    Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c.    An order restraining Defendants from any retaliation against Plaintiffs and/or FLSA Plaintiffs for participation in any form in this litigation;

d.    Designation of this action as an FLSA collective action on behalf of Plaintiffs and FLSA Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA

claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

e.      Designation of Plaintiffs and their counsel as collective action representatives under the FLSA;

f.      All damages that Plaintiffs and FLSA Plaintiffs have sustained as a result of the Defendants' conduct, including all unpaid wages and any shortfall between wages paid and those due under the law that Plaintiffs and FLSA Plaintiffs would have received but for Defendants' unlawful payment practices;

g.      Treble damages and any other statutory penalties as recoverable under the FLSA and NJWHL;

h.      Awarding Plaintiffs and FLSA Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs, and an award of a service payment to Plaintiffs;

i.      Awarding Plaintiffs with a service award for their role as collective action representatives and in recognition for their dedication to the FLSA Plaintiffs and their willingness to come forward as the lead Plaintiffs on behalf of the FLSA Plaintiffs;

j.      Declaring that Defendants' actions, as set forth above, constitute unlawful retaliation in violation of 29 U.S.C. § 215(a)(3);

k.      Awarding Plaintiff Muñoz compensatory damages for all earnings and benefits he would have received but for Defendants' retaliatory reduction in his hours and wages, including back pay and front pay;

l.      Awarding Plaintiff Muñoz treble damages in an amount equal to 300% his compensatory damages;

m.    Awarding Plaintiff Muñoz punitive damages in an amount sufficient to punish Defendants for their willful, intentional, and bad faith conduct and to deter similar conduct in the future;

n.    Enjoining Defendants from engaging in any further retaliatory conduct against Plaintiff Muñoz or any other employee who asserts their rights under the FLSA;

o.    Pre-judgment and post-judgment interest, as provided by law; and

p.    Granting Plaintiffs and FLSA Plaintiffs such other and further relief as this Court finds necessary and proper.

Dated: New York, New York
         January 31, 2025

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

By:    _____
        MICHAEL R. MINKOFF
        110 East 59th Street, Suite 2300
        New York, New York 10022
        Tel.: (212) 227-5700
        Fax: (212) 656-1889
        *Attorneys for Plaintiffs and FLSA Plaintiffs*